CHASEZ, Judge.
The United States Rubber Company sued James K. Burch and Woods E. Burch, doing business as Burch Tire Company, for the price of rubber sold defendants, which defendants admitted by answer to be due. But by reconventional demand defendants claimed $21,452.61 damages allegedly caused by defective rubber sold them by plaintiff on an earlier occasion.
This appeal concerns only defendants’ reconventional demand. Defendants appeal from a judgment which awarded them $500.00, seeking an increase; and plaintiffs answer the appeal, seeking reversal of that aspect of the judgment. The correctness of the judgment, insofar as it awarded plaintiff the price of the later rubber shipment, is not in dispute.
To put it in a nutshell, we find the situation to have been that appellants, who ■had no experience whatsoever in the recapping business, produced recapped tires which proved to be utterly unsuited for use. Although brand new in the business, they attempt to blame their failures upon the manufacturer of the recap rubber. We conclude they have failed in that attempt; that they have not proved their case as plaintiffs in reconvention by a preponderance of the evidence.
The best that can be said for appellants' evidence is that it tended to show that although they were new in the business, they attempted to follow instructions with reference to shop procedures; however, they failed to do so in respect to the time of curing the tires in a heated mold. In *811 stead of curing the tires for an hour, they deliberately cured them for an hour and twenty minutes. Appellant Woods Burch explained, “We added twenty minutes to the recommended curing time in the shop. I’m of the old belief that somebody says a certain amount is good. Sometimes a little bit more might be better.”
Appellants’ expert George R. Edwards who performed tests for them on appellee’s rubber, on cross-examination in deposition testified as follows:
“Q. Now, this retreading tires, from your own experience, is something that requires a rather high degree of meticulousness on the part of the retreader if he is going to produce a suitable product, isn’t that correct ?
“A. That is correct, sir.
“Q. It also requires a considerable amount of experience in, for example, curing it for the proper length of time?
“A. Yes, sir.
“Q. And you don’t get such experience in a matter of a couple of months, do you?
“A. Not normally. If the person would read his instructions and follow recommendations, he probably could do pretty well; but it is a matter of specifics. Generally, he’d need some experience.”
Edwards further testified:
“Q. In order for you to be able to analyze a situation and to express an opinion as to what probably caused defective tires produced by a retreader, wouldn’t it be necessary for you to have a cross section of some of these tires to take a look to see how their separation looked after it did separate?
“A. If we were to — If my purpose was to determine what caused the separation in a finished tire, yes, sir. In this case, I was only looking at the tread rubber and trying to determine whether or not the product was at fault, sir.
“Q. In other words, insofar as you are concerned, if it were a question of trying to determine the cause of these tires not being up to standard, you’d have to investigate not only some of these tires that were returned as defective, but you’d also certainly want to know the procedure in the retreading shop, how they buff their tires, whether or not they were meticulous in the measurement of the tires, whether or not they were using the proper mold for the proper size tire? You’d want to know all of these things, wouldn’t you ?
“A. Yes, sir.”
The results of Edwards’ tests, which appellants offered to show that the rubber in question was in fact defective, must be disregarded entirely. The tests were made two and a half years after the rubber was sold to appellants and Edwards himself testified that mere age beyond one year would render the rubber unsuitable for use.
Other evidence in the record shows that appellants had the same trouble using Goodyear rubber although they claimed to have settled their differences with Goodyear.
Appellee showed that two other recappers” with long experience, used rubber from the same warehouse supply as that in question, with no untoward result.
We take this evidence to show that the inexperienced appellants did not produce good tires with either United States Rubber Company or Goodyear Rubber recap material, while experienced men produced good tires with the same United States Rubber Company recap material.
*812 The rubber in question, supplied in January and February of 1960, was all used by appellants prior to September of that year. As early as May, they claimed, they were receiving large returns of detective tires; however, they paid the final amount due on the rubber in June of 1960, and made no complaints to appellee of defects in the rubber until October of 1960. Moreover, in spite of the fact that they attributed their trouble to faulty rubber supplied by appellee, appellants ordered a second 5,000 pound shipment in December of 1960, without intending to pay for it. They explain that appellee wouldn’t make any adjustment for them on the first shipment and they hoped to get action by refusing to pay for the second. But they were then claiming to have lost about $6.00 (over rubber cost) on each of 450 tires, and to have lost much future business, yet they proposed to use another 5,000 pounds of the very same rubber to recoup some of their losses. This action, to say the least, is hardly consistent with a belief that United States Rubber Company rubber supplied ten months earlier wás unsuitable, since if so appellants could only have expected to lose another 450 tire carcasses, plus labor and overhead, and also to further ruin their reputation and future in the recapping business. Fortunately for appellants, they were able to produce good tires with the second shipment.
Although we hold appellee not liable at all, and therefore quantum is not before us, we must necessarily hold since the issue was made that even if the rubber were proven defective what damage the defects caused is not proven. The testimony about tires being replaced does not sufficiently indicate the number of tires involved, nor does it identify the recap rubber as having been supplied by appellee rather than by the other two suppliers then used by appellants.
The judgment appealed from is affirmed insofar as it awarded plaintiff-appellee judgment on the main demand, and it is reversed insofar as it awarded defendants-appellants $500.00 damages on their recon-ventional demand and the reconventional demand is dismissed. Appellants shall bear the costs in the lower court as well as costs on appeal.
Affirmed in part reversed in part.